OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

The State of Ohio, Appellee, v. Woodard, Appellant.
[Cite as State v. Woodard (1993),    Ohio St.3d    .]
Criminal law -- Aggravated murder -- Death penalty upheld, when.
(No. 92-1257 -- Submitted September 14, 1993 -- Decided December 23, 1993.)
Appeal from the Court of Appeals for Cuyahoga County, No. 61171.

On the evening of June 20, 1990, John Woods, "Curt" Thompson, Gary Hill and appellant, Eugene Woodard, drove a stolen blue Oldsmobile Cutlass to an area known as "The Block," near Kinsman and E. 71st and E. 73rd Streets in Cleveland. There, the men joined a group of other young men and began discussing the topic of "gaffling." (Apparently, "gaffling" is a term used to describe the act of forcibly removing people from their cars to rob them.) Eventually, someone in the crowd said, "[l]et's go do the gaffling." The group then left the area in four separate vehicles to go "gaffling." Appellant, Woods, Thompson and Hill led the way in the stolen Cutlass. Woods drove, and appellant was in the front passenger seat armed with a .44 or .45 caliber handgun. Thompson also had a handgun, a .38 caliber, but that weapon was not loaded. The other three vehicles followed the Cutlass in tandem.

The first victim of the evening was spotted near the intersection of E. 116th Street and Harvard Avenue, driving a black Oldsmobile with expensive wheels. Woods pulled up next to the black car, and appellant told the occupant, Mark Stevenson, that he (appellant) had to have the wheels. Appellant fired a shot at Stevenson and the bullet struck Stevenson's car. A chase ensued, but Stevenson was able to outrun his pursuers. The stolen Cutlass overheated, and the four men (appellant, Woods, Thompson and Hill) abandoned the automobile. They then stole a maroon Oldsmobile Delta Eighty-Eight from a parking lot on Harvard Avenue and resumed their search for a victim to "gaffle."

Later that evening, the four men were riding in the stolen Delta when they spotted Mani Akram, who was driving a gray Oldsmobile Ninety-Eight with custom wheels. Woods, who was

driving the Delta, pulled in front of Akram's automobile and abruptly applied the brakes, causing Akram's vehicle to collide with the Delta. Appellant and Thompson exited the Delta and approached the victim's car. Hill testified that appellant opened Akram's door and shot Akram. Another witness also observed appellant standing near Akram's car door, holding a gun. Thompson removed Akram from the car, entered the automobile, and drove away. The Delta also fled the scene and both vehicles proceeded to a location where the crowd that had been "gaffling" began to reassemble. Akram, who was left for dead at the scene of the shooting, died as a result of a single gunshot wound to the chest.

Following the shooting, appellant and Thompson were seen and were heard arguing over who was entitled to the property that had been stolen from Akram. During the argument, Willie Gibson heard appellant say, "I should get the radio. I'm the one that shot the guy." Hill heard appellant make a similar statement. Alan Hill heard appellant say, "[w]ell, if the nigger die, it's me that shot him, so I should get the most." Kenneth Pounds heard appellant say, "I'm the one with the murder case." Alan Hill also recalled that at one point, appellant fell to his knees, cried, and stated that he would surrender to police. A number of witnesses who observed the argument testified that appellant was brandishing a firearm, and at least one of them stated that appellant had fired the weapon during the confrontation with Thompson.

Later that evening, at E. 71st and Port Avenue, appellant and other members of the group doused the stolen Delta and Akram's car with gasoline and set the vehicles on fire. When Akram's automobile was recovered by police, the car stereo was missing. Although the murder weapon was never recovered by police, a .45 caliber shell casing was recovered from the area where Akram was shot.

In July 1990, appellant was indicted on two separate counts for the aggravated murder of Akram. Count One charged appellant with the purposeful killing of Akram during the commission of an aggravated robbery. Count Two charged appellant with purposefully, and with prior calculation and design, causing Akram's death. Each of these two counts of aggravated murder carried a death penalty specification (R.C. 2929.04[A][7]), and a specification that the offense was committed with a firearm. Appellant was also indicted on one count of receiving stolen property (the maroon Delta), one count of aggravated robbery with a firearm specification, and two counts of arson.

Appellant was tried before a jury. The jury found appellant not guilty of arson, but guilty of all other charges and specifications alleged in the indictment. During the penalty phase of the trial, appellant made an unsworn statement in which he admitted his involvement in the carjacking of Akram's vehicle. Appellant denied shooting Akram and claimed that Gary Hill was the shooter. Although appellant admitted that he had handled the murder weapon (a .45 caliber automatic), he claimed that the weapon was given to Hill just before Hill shot Akram.

For the aggravated murder of Akram, the trial court, following the jury's recommendation, sentenced appellant to

death.  For all the remaining offenses and specifications, appellant was sentenced in accordance with law.  On appeal, the court of appeals affirmed appellant's convictions and sentences, including the sentence of death.

The cause is now before this court on an appeal as of right.

Stephanie Tubbs Jones, Cuyahoga County Prosecuting Attorney, Richard J. Bombick, George J. Sadd and Elaine Welsh, Assistant Prosecuting Attorneys, for appellee.

David L. Doughten; and Robert Ingersoll, Cuyahoga County Assistant Public Defender, for appellant.

Douglas, J.     Appellant presents ten propositions of law for our consideration.  We have considered appellant's propositions of law, independently weighed the statutory aggravating circumstance against the evidence presented in mitigation, and reviewed the death penalty for appropriateness and proportionality.  Upon review, and for the reasons which follow, we affirm the judgment of the court of appeals and uphold appellant's death sentence.

I

In his first proposition of law, appellant urges that the trial court erred in allowing the state to introduce evidence of other "unrelated" crimes and wrongful acts committed by appellant.  Specifically, appellant claims that the trial court erred in allowing the testimony that appellant shot at Mark Stevenson and attempted to rob him.  Appellant also claims error from the introduction of the testimony of Alan Hill, who, on redirect examination, indicated that appellant wanted to rob someone at a McDonald's restaurant sometime prior to Akram's murder.  Appellant suggests that the evidence of these other crimes or bad acts was irrelevant and highly prejudicial, and that such evidence should have been excluded by the trial court under Evid.R. 404(B).  We find no reversible error.

Evid.R. 404(B) provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  (Emphasis added.)

Evidence of other crimes, wrongs or bad acts independent of, and unrelated to, the offenses for which a defendant is on trial is generally inadmissible to show criminal propensity.  State v. Wickline (1990), 50 Ohio St.3d 114, 120, 552 N.E.2d 913, 920.  However, the evidence of the attempted carjacking in this case was not used for an impermissible purpose.  The evidence of appellant's attempt to shoot and to rob Stevenson tended to establish appellant's identity as the triggerman involved in the aggravated murder of Akram.  The evidence also helped to prove appellant's motive and intent with respect to the robbery and murder of Akram, as well as the element of prior calculation and design.  Additionally, this evidence demonstrated, rather convincingly, appellant's overall plan to forcibly commandeer vehicles with expensive tires and rims from unsuspecting motorists.  In our judgment, the evidence

concerning the attempted carjacking of Stevenson's vehicle was extremely relevant and was properly admitted by the trial court.

With regard to the testimony of Alan Hill, we find no prejudicial error warranting reversal, particularly in light of the overwhelming evidence of appellant's guilt. Additionally, we note that the trial court properly instructed the jury as to the limited purposes for which such "other act" evidence could be considered. As always, we assume that the jury was able to follow the proper instructions of the trial court.

Accordingly, appellant's first proposition of law is not persuasive.

## II

Gary Hill, John Woods and Curt Thompson were also indicted for the aggravated murder of Akram. Gary Hill testified at appellant's trial as part of a plea bargain arrangement in which Hill pled guilty to the lesser offense of murder. During appellant's cross-examination of Hill, Hill admitted to having previously robbed people of their vehicles at gunpoint. However, Hill denied possessing any weapons on the night of Akram's murder. The trial court sustained the state's objection when appellant asked Hill what type of weapon Hill had used on prior occasions of robbing people.

In his second proposition of law, appellant contends that the trial court unduly restricted his right to cross-examine Gary Hill concerning Hill's possible possession of the murder weapon. However, as we have noted on a previous occasion, the limits to which a witness may be cross-examined are within the sound discretion of the trial court. See State v. Green (1993), 66 Ohio St.3d 141, 147, 609 N.E.2d 1253, 1259. Absent an abuse of discretion, the trial court's determination to limit appellant's cross-examination of Hill will not be disturbed on appeal. We find no abuse of discretion here. Appellant's question concerning the type of gun normally used by Hill in prior robberies was essentially irrelevant to the issue whether Hill possibly possessed some type of firearm on the night of Akram's murder. Additionally, the trial court did, in fact, permit appellant to question Hill rather extensively concerning Hill's contact with weapons on the evening of the murder. Accordingly, appellant's second proposition of law is not well taken.

## III

In his third proposition of law, appellant argues that the trial court erred in failing to instruct the jury during the guilt phase that, with respect to the R.C. 2929.04(A)(7) death penalty specification, the jury was required to unanimously find either that appellant was the principal offender or that he acted with prior calculation and design. Appellant suggests that the jury's verdict might have been a "patchwork verdict" with some (but not all) jurors convicting appellant of the specification on the basis that appellant was the principal offender, and others finding that appellant acted with prior calculation and design.

Initially, we note that appellant neither requested such an instruction nor objected to the instructions given. Thus, our discretionary review of the alleged error must proceed, if at all, under the plain error analysis of Crim.R. 52(B). See State v. Moreland (1990), 50 Ohio St.3d 58, 62-63, 552 N.E.2d

894, 899-900, and State v. Bonnell (1991), 61 Ohio St.3d 179, 183-184, 573 N.E.2d 1082, 1087. Accordingly, we will not reverse appellant's conviction of the R.C. 2929.04(A)(7) death penalty specification (in connection with either count of aggravated murder) unless we determine that the outcome of appellant's trial would clearly have been otherwise had the error not occurred. Id.

After the jury had begun its deliberations in the guilt phase, the jury requested that the trial court respond to a number of questions. Several of the jury's inquiries related to the death penalty specification in Counts One and Two of the indictment. One of the jury's questions was: "Are the specifications about being the principal offender, or if not the principal offender, then with prior calculation and design mutually exclusive?" The trial court responded by stating, "[w]ell, you can find either in the alternative. You can find either that the defendant was the principal offender, or if you feel he wasn't the principal offender, then you can -- if you find that the [sic] acted with prior calculation and design. Either one of those. You can find both of them or either one." The trial court did not specifically instruct the jury that all members of the jury were required to agree which one (prior calculation and design or principal offender) applied to appellant, unless they unanimously determined that both alternatives were applicable.

Assuming arguendo that there was some confusion in the jury over the need for unanimity, we are unable to conclude that the alleged error by the trial court amounts to "plain error." The jury found appellant guilty of both counts of aggravated murder. In finding appellant guilty of the second count of aggravated murder (premeditated murder), the jury specifically and unanimously found that appellant acted with prior calculation and design. Therefore, no "patchwork verdict" as to the death specification occurred. The jury was obviously unified in its determination that appellant purposely killed Akram with prior calculation and design. Furthermore, the evidence at trial did not reasonably suggest that Akram's murder was committed by anyone other than the appellant. Therefore, the jury must have also unanimously concluded that appellant was the principal offender.

Accordingly, we reject appellant's third proposition of law.

IV

The subject of appellant's fourth proposition of law concerns instances of alleged misconduct by prosecutors during closing arguments in the penalty phase. However, appellant failed to object to any of the instances of alleged misconduct. Nevertheless, we have considered appellant's arguments and find no error which can be said to have clearly affected the outcome of appellant's trial.

Appellant's first claim of misconduct involves the prosecutor's initial closing statement during the penalty phase in which the prosecutor repeatedly referred to the facts of the offense as "aggravating circumstances." Describing the facts of the case as "aggravating circumstances" might not have been the best choice of words, since death-eligible statutory aggravating circumstances are limited to those specifically set

forth in R.C. 2929.04(A)(1) through (8).  However, we find no plain error in this regard.  The trial court instructed the jury during the penalty phase that the only statutory aggravating circumstance to be considered was that the murder occurred during the commission of an aggravated robbery. Furthermore, defense counsel was quick to inform the jury during closing argument that "[c]ontrary to what the prosecutor has stated, there is only one aggravating circumstance in this case, and that is the aggravated robbery * * *."  Additionally, in our judgment, the evidence presented in mitigation was slight and not compelling, and was clearly outweighed by the statutory aggravating circumstance involved in this case.

Appellant also claims that during the prosecutor's final argument in the penalty phase, the prosecutor improperly vouched for the credibility of Gary Hill.  Specifically, the prosecutor stated, "[d]o you [the jury] think for one moment if Gary Hill was the triggerman in this case, he would have been allowed to plead to a straight murder?  That's absolutely absurd."  While it would have been improper for the prosecutor to vouch for the credibility of a witness, that is not what occurred in this case.  Rather, the prosecutor made the remark in question in response to appellant's unsworn statement in the mitigation hearing that Gary Hill killed Akram.  In any event, we find no prejudicial error resulting from this one remark by the prosecutor.

Accordingly, appellant's fourth proposition of law is not persuasive.

V

In his fifth and eighth propositions of law, appellant contends that his death sentence must be vacated due to alleged errors by the trial court in instructing the jury during the penalty phase.  Again, appellant failed to object to the trial court's instructions.  Therefore, we will not vacate appellant's death sentence, absent a finding of plain error. See Moreland and Bonnell, supra.

Appellant suggests that the trial court's sentencing instructions on "reasonable doubt" constitute reversible error.  The trial court instructed the jury that "[r]easonable doubt is present when, after you have carefully considered and compared all the evidence, you cannot say you are firmly convinced of the truth of the charge."  (Emphasis added.) Appellant urges that this instruction essentially forced the jury to recommend death since, at that point in the trial, the jury had already been convinced of the truth of the charges. However, the issue appellant now raises was addressed by this court in the case of State v. Spirko (1991), 59 Ohio St.3d 1, 17, 570 N.E.2d 229, 248.  Here, as in Spirko, we find no reversible error.  Considered as a whole, the trial court's sentencing instructions were not prejudicial to appellant.

Appellant also claims that the trial court instructed the jury on all mitigating factors listed in R.C. 2929.04(B), whereas appellant raised only one mitigating factor in his defense.  However, the record does not support appellant's contention.  Rather, the record is clear that the trial court instructed the jury on only the mitigating factors requested by appellant and possibly applicable.  Therefore, we find no error, plain or otherwise.

Appellant further claims that the trial court erred in its instructions to the jury by referring to mitigating factors as those which "may be considered by you as extenuating or reducing the degree of the defendant's blame or punishment." While the use of the term "blame" was improper, that error alone was not prejudicial. See State v. Lawrence (1989), 44 Ohio St.3d 24, 29, 541 N.E.2d 451, 457. The jury instructions in this case, taken as a whole, indicate that the penalty phase of appellant's trial was for a determination of punishment -- not for the assessment of "blame" or culpability.

In his eighth proposition of law, appellant suggests that the trial court committed reversible error in instructing the jury that their "recommendation" of death would not be binding on the court, and that the final decision to impose the death penalty rested with the trial judge. Appellant also urges that remarks by the prosecutor concerning the jury's role in the sentencing process constitute reversible error. Appellant relies on Caldwell v. Mississippi (1985), 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231, in support of his contentions. However, the argument appellant now raises has been considered and rejected by this court under analogous circumstances on a number of previous occasions. See, e.g., State v. DePew (1988), 38 Ohio St.3d 275, 280, 528 N.E.2d 542, 550; State v. Buell (1986), 22 Ohio St.3d 124, 142-144, 22 OBR 203, 219-220, 489 N.E.2d 795, 811-813; State v. Williams (1986), 23 Ohio St.3d 16, 21-22, 23 OBR 13, 18-19, 490 N.E.2d 906, 912; State v. Steffen (1987), 31 Ohio St.3d 111, 113-114, 31 OBR 273, 275, 509 N.E.2d 383, 387-388; and State v. Johnson (1989), 46 Ohio St.3d 96, 105-106, 545 N.E.2d 636, 645. Appellant presents us with no compelling argument why we should now change our position on this issue.

Accordingly, appellant's fifth and eighth propositions of law are found not well taken.

VI

In his seventh proposition of law, appellant contends that he was deprived of the effective assistance of counsel during the trial court proceedings. However, we find that appellant has failed to meet his burden of establishing ineffective assistance under the standards set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Therefore, we reject appellant's seventh proposition of law.

VII

In his sixth proposition of law, appellant contends that the trial court erred in permitting the state during the penalty stage to introduce into evidence all of the state's exhibits that were admitted during the guilt stage. We disagree. In DePew, supra, 38 Ohio St.3d at 282-283, 528 N.E.2d at 552, we stated that:

"The courts of this state have been required to wrestle with the question of what evidence is appropriate for the prosecution to introduce at the penalty stage. We now hold that, pursuant to R.C. 2929.03(D)(1), the prosecutor, at the penalty stage of a capital proceeding, may introduce '* * * any evidence raised at trial that is relevant to the aggravating circumstances the offender was found guilty of committing * * *.' While this appears to permit repetition of much or all

that occurred during the guilt stage, nevertheless, a literal reading of the statute given to us by the General Assembly mandates such a result, especially in light of the prosecution's obligation to demonstrate, by proof beyond a reasonable doubt, that the aggravating circumstances the defendant was found guilty of committing are sufficient to outweigh the factors in mitigation.  R.C. 2929.03(D)(1)."

We find that the exhibits that were admitted into evidence during the penalty phase of appellant's trial were relevant to the death penalty specifications of which appellant was found guilty, and to the nature and circumstances of the offense. Accordingly, we reject appellant's sixth proposition of law.

### VIII

In his ninth proposition of law, appellant suggests that the trial court erred in permitting the jury to consider both counts of aggravated murder in their sentencing deliberations. Appellant contends that the prosecutor should have been required to elect, before the penalty phase, which of the two counts of aggravated murder was to be submitted to the jury for sentencing.  However, appellant's claims of resulting prejudice are speculative and lack merit.  At the outset of the penalty phase, the jury was instructed that only one death penalty specification was to be considered by them in connection with each count of aggravated murder.  Additionally, contrary to appellant's assertion in this proposition of law, the trial court did properly merge the two offenses of aggravated murder before sentencing appellant to death.  Accordingly, we reject appellant's ninth proposition of law on the authority of State v. Waddy (1992), 63 Ohio St.3d 424, 447, 588 N.E.2d 819, 836, and State v. Poindexter (1988), 36 Ohio St.3d 1, 5, 520 N.E.2d 568, 572.

### IX

In his tenth proposition of law, appellant argues that Ohio's death penalty scheme is unconstitutional.  However, we have consistently held that Ohio's death penalty scheme is constitutional and we continue to adhere to that position. Thus, we reject appellant's tenth proposition of law.

### X

Having considered appellant's propositions of law, we must now independently review the death sentence for appropriateness and proportionality.

Appellant shot Akram to rob him, and the shooting occurred during the course of the aggravated robbery.  Akram died as a result of the gunshot wound inflicted by appellant.  We find that the death penalty specification of which appellant was found guilty, R.C. 2929.04(A)(7), was proven beyond a reasonable doubt.

Appellant presented some evidence concerning his history and family background.  However, appellant's disadvantaged background appears no different from that suffered by many other youths who do not rob and kill.  Appellant's mother and appellant's sister testified that they love appellant, and both requested that appellant be spared the death penalty.  In his unsworn statement, appellant also pled for mercy.  Appellant expressed sorrow for Akram's family, but denied that he had killed Akram.  We assign these various matters little or no weight in mitigation.

Appellant was nineteen years old at the time the offenses were committed. This R.C. 2929.04(B)(4) factor is entitled to some, but very little, weight in mitigation.

Weighing the statutory aggravating circumstance against the evidence presented in mitigation, we find that the statutory aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt.

Finally, we have undertaken a comparison of the sentence in this case to those in which we have previously imposed the death penalty. We find that appellant's death sentence is neither excessive nor disproportionate. See, e.g., State v. Mills (1992), 62 Ohio St.3d 357, 582 N.E.2d 972, and State v. Tyler (1990), 50 Ohio St.3d 24, 553 N.E.2d 576.

Accordingly, the judgment of the court of appeals is affirmed.

Judgment affirmed.

Moyer, C.J., A.W. Sweeney, Resnick and Pfeifer, JJ., concur.

Wright and Sherck, JJ., concur in part and dissent in part.

James R. Sherck, J., of the Sixth Appellate District, sitting for F.E. Sweeney, J.

Sherck, J., concurring in part and dissenting in part. I concur but respectfully write separately because I disagree with the majority's analysis of appellant's sixth proposition of law concerning the admission of certain evidence at the penalty stage of the trial that was previously admitted during the guilt stage.

The majority, quoting State v. DePew (1988), 38 Ohio St.3d 275, 528 N.E.2d 542, states that a literal reading of R.C. 2929.03(D)(1) "mandates" that the prosecutor be permitted to introduce any relevant evidence concerning the aggravating circumstances raised at trial into the penalty phase of the proceedings. I believe that while such evidence may be admissible, it should not be automatically admitted. The question of its admissibility should be governed by the Rules of Evidence, as the rules apply to the sentencing phase of a capital trial. See State v. Esparza (1988), 39 Ohio St.3d 8, 11, 529 N.E.2d 192, 196. The Evidence Rules do not allow the automatic admission of evidence; rather, they impose upon the trial court the duty to weigh the probative value of the evidence against the potential for unfair prejudice, confusion of the issues, and misleading of the jury. Evid.R. 403. I would find that R.C. 2929.03(D)(1), when interpreted as automatic in nature, is in conflict with the Evidence Rules. When statutes concerning the admission of evidence conflict with the Rules of Evidence, the rules prevail. In re Coy (1993), 67 Ohio St.3d 215, 218-219, 616 N.E.2d 1105, 1108.

In addition, I believe that the pertinent portion of R.C. 2929.03(D)(1) is a procedural device enacted to assist the prosecution in the re-admission of necessary penalty-phase evidence. The majority, in its opinion today and in DePew, has given a mechanical tool the status of an evidence mandate that supplants well-established safeguards.

I see little, if any, probative value in the admission of the contested exhibits, as the exhibits are offered for the sole purpose of supporting the aggravating circumstance of aggravated robbery. Accordingly, I would find that they were

erroneously admitted.  Nevertheless, after review, I am convinced beyond a reasonable doubt that the admission of these particular exhibits was not prejudicial.  Therefore, their admission was harmless error.

Wright, J., concurs in the foregoing opinion.