[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
Anthony Wheeler, the defendant-appellant, after trial by jury, stands convicted of murder and two counts of rape. He was sentenced to a term of imprisonment for fifteen years to life for the murder, which was made consecutive to concurrent terms for the rapes. A separate count for abuse of a corpse was merged with the rapes as being an allied offense of similar import.
The first of Wheeler's six assignments of error states that "[t]he trial court erred as a matter of law by overruling appellant's motion to suppress the statements made by him to the Norwood police on August 30, 1996 and September 10, 1996." Wheeler, who was separated from his wife and children, moved into the single-bedroom apartment in Norwood, Ohio, occupied by his widowed seventy-five-year-old maternal grandmother, Iza Pearl Coffey, on August 2, 1996. Mrs. Coffey was then suffering from symptoms associated with Alzheimer's disease, and Wheeler began to act as her caretaker. He also worked as a baker, with customary hours of employment taking him from the home from 11:30 p.m. one day to 6:30 a.m. the following day.
Shortly after 6:30 a.m. on August 30, 1996, Wheeler placed a telephone call to the 911 emergency service, in response to which medical technicians and Norwood police arrived at Mrs. Coffey's address. He told them that he "thought his grandmother was dead." The paramedics found Mrs. Coffey's body prone in her bed, with a pillow over her face and her breasts and genitalia exposed, and confirmed that she was without a pulse and lifeless. Wheeler, who was seated on the porch of the residence smoking a cigarette, was approached by a Norwood plainclothes detective and asked to provide personal information about Mrs. Coffey so that the police could begin their investigation of her death. Wheeler was transported to a Norwood police station in a detective's unmarked vehicle and was interviewed there beginning at 8:10 a.m. According to the detective, Wheeler was not then a suspect. At 8:50 a.m., Wheeler used a telephone at the stationhouse to inform his mother of her mother's death. At no time was Wheeler under physical restraint, and the interview concluded at about 11:30 a.m., when Wheeler left.
By September 10, 1996, additional information acquired by the police made Wheeler a suspect in the case. The autopsy, which had been performed on August 30, 1996, revealed that Mrs. Coffey died sometime between 9:30 p.m., August 29, and 3:30 a.m., August 30, as a result of asphyxia due to strangulation. The coroner who performed the post-mortem examination noted signs of external injury including a tear in the vagina, a contusion involving the anus, and the fracture of a bone in Mrs. Coffey's neck.
On September 10, the same Norwood plainclothes detective, accompanied by another plainclothes officer, located Wheeler at the residence of a friend. Wheeler agreed to return with the officers in their unmarked car to the police station, was given the appropriate Miranda warnings orally and in writing, and, at 3:20 in the afternoon, signed a waiver-of-rights form. Wheeler answered questions and made statements until the interview was ended at 6:35 p.m. Again, he was permitted to leave. Wheeler also signed a written consent to have the coroner draw a sample of his blood and take samples of his saliva and hair. It was not until March 7, 1997, that the grand jury returned a sealed indictment. Wheeler was arrested on March 10, 1997.
An expert in serology analyzed cells taken on a swab from Mrs. Coffey's breasts and compared them with cells from Wheeler's saliva. That DNA testing demonstrated that Wheeler could not be excluded as a source of the cells obtained from Mrs. Coffey's right breast and that, in the expert's opinion, Wheeler was the primary source of the DNA. A test of the pillowcase that had covered the victim's face yielded evidence of Wheeler's semen, and a pubic hair similar to that taken from Wheeler was found on Mrs. Coffey's anus. An expert who testified on Wheeler's behalf disputed part of the state's DNA evidence, but conceded that Wheeler could not be excluded as a source.
Wheeler's primary argument in support of his first assignment is that he was in police custody when he made the statements to police, and that his interrogators were required by law to have given him Miranda warnings before questioning commenced. The state agrees that Miranda v. Arizona (1966),384 U.S. 436, 86 S.Ct. 1602, requires police to give those warnings whenever a suspect is subjected to custodial interrogation, but submits, first, that on August 30, 1996, Wheeler was neither a suspect nor in custody. The only testimony in the record with respect to Wheeler being a suspect at that time is that he was not. The state argues, further, that he was not in custody either.
In deciding California v. Beheler (1983),463 U.S. 1121, 1124, 103 S.Ct. 3517, 3519, the Supreme Court reiterated a holding it had made in Oregon v. Mathiason (1977), 429 U.S. 492,495, 97 S.Ct. 711, 714, in these words:
 "[t]he police are required to give Miranda warnings only `where there has been such a restriction on a person's freedom as to render him "in custody."'"
In Beheler, supra at 1124, 103 S.Ct. at 3519, the Supreme Court noted also that:
 Our holding in Mathiason reflected our earlier decision in Beckwith v. United States, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976), in which we rejected the notion that the "in custody" requirement was satisfied merely because the police interviewed a person who was the "focus" of a criminal investigation. We made clear that "Miranda implicitly defined `focus' * * * as `questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'"[Citations omitted.]
Ultimately, the Beheler court declared,46 U.S. at 1125, 103 S.Ct. at 3520:
 Although the circumstances of each case must certainly influence a determination of whether a suspect is "in custody" for purposes of receiving Miranda
protection, the ultimate inquiry is simply whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest. Mathiason, supra, at 495, 97 S.Ct., at 714.
The record convinces us that at no time critical to the issue raised in Wheeler's first assignment was Wheeler formally arrested or his freedom of movement restrained. We conclude, then, upon the authority of California v. Beheler,supra, that Wheeler was not in custody and that the Norwood police were not required to give Miranda warnings when questioning Wheeler on either August 30 or September 10, 1996. See State v.Barnes (1987), 25 Ohio St.3d 203, 207, 495 N.E.2d 922, 925. Therefore, the first assignment is overruled.
The second assignment is that the trial court erred by allowing the state to present evidence of other acts allegedly committed by Wheeler. It is overruled because the challenged testimony, viz., the heated, profane words spoken by Wheeler to his wife, which threatened her life and the lives of other family members, tended to show Wheeler's motive, intent and system in killing his grandmother and was admissible pursuant to Evid.R. 404(B) and R.C. 2945.59. See State v. Woodard (1993), 68 Ohio St.3d 70,623 N.E.2d 75.
The third and fourth assignments are overruled on the authority of State v. Barnes, supra. See, also, State v. Waddy
(1992), 63 Ohio St.3d 424, 588 N.E.2d 819; State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212.
The fifth assignment is overruled. The court did not err in permitting Wheeler's former wife to testify because she, after having been fully advised in the premises, voluntarily elected to testify against Wheeler. See Evid.R. 601(B)(2); Statev. Adamson (June 10, 1994), Brown App. No. CA92-05-011, unreported.
The sixth assignment is overruled because the assistance afforded Wheeler by his counsel was not ineffective, when its quality is assessed upon the standards established inStrickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, and State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.
We, therefore, affirm the judgment of the trial court.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
DOAN, P.J., HILDEBRANDT and SHANNON, JJ.
Judge RAYMOND E. SHANNON, retired, of the First Appellate District, sitting by assignment.
To the Clerk:
Enter upon the Journal of the Court on February 23, 2000
per order of the Court _______________________________.
 _______________________________________________ Presiding Judge