JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Eric Powell appeals from his convictions for two counts of aggravated robbery in violation of R.C. 2911.01, with a firearm specification; and two counts of aggravated burglary in violation of R.C. 2911.11, with a firearm specification; and one count of having a weapon under a disability in violation of R.C. 2923.13. The appellant was sentenced to an aggregate of seven years incarceration.
{¶ 2} Early in the morning of December 16, 2000, the appellant entered the apartment of Ms. Laurie Vovko and demanded her money. Ms. Vovko had just returned to her apartment from work and was watching television with Christopher Smith, the babysitter she hired to watch over her four-year-old son while she worked. Immediately after he burst into her apartment, Ms. Vovko said to the appellant, Shack, what are you doing? (T. 219). Shack, the nickname by which the appellant was known, held a small black revolver in his right hand. He ordered Ms. Vovko to stand up and when she did not, he struck her in the face. Ms. Vovko was able to immediately identify the appellant because she knew him, because of his voice and because of his green contacts.
{¶ 3} The appellant retrieved only $105 from Ms. Vovko's pants pocket and then inquired as to whether she had any more money. Ms. Vovko responded in the negative and the appellant then inquired of Christopher Smith, whom he called Big Boy if he had any money. Mr. Smith said no. Ms. Vovko testified that the appellant was the only person who called Christopher Smith Big Boy.
{¶ 4} The appellant tied the hands of Ms. Vovko and Mr. Smith and placed them on the floor between the bedroom and living room of the apartment. The appellant then rummaged through the apartment looking for valuables. Ms. Vovko's large television was moved from its stand, but was left in the kitchen. The VCR, which had been on top of the television, was taken.
{¶ 5} Ms. Vovko testified that she knew the appellant well. She had previously babysat for his daughter. Carl Smith, Christopher Smith's brother, lived downstairs with his aunt and his uncle, Greg Hicks. Barnett Powell, the appellant's cousin, lived on the same floor of the apartment building as Ms. Vovko. The appellant had previously borrowed money from Ms. Vovko and knew when she received her paycheck. Ms. Vovko had been paid on the day of the robbery.
{¶ 6} Ms. Vovko testified that the revolver would click, turn and click, turn and click (T. 224). The appellant acted like there were bullets in the gun. Christopher Smith testified that the appellant held a short, black gun. He stated that the gun spun and that the appellant pointed it both at him and at Ms. Vovko.
{¶ 7} In general, the testimony of Christopher Smith corroborated that of Ms. Vovko. Christopher Smith lived with his mother in a building close to Ms. Vovko's. The appellant entered the apartment, with a gun in his hand, and demanded money. He recognized the appellant when the appellant called him Big Boy. Mr. Smith also recognized the appellant by his unusual walk and by the sound of his voice. The appellant searched Mr. Smith's pants pockets, but discovered nothing. At one point, Christopher's brother, Carl, was calling to him from outside of the apartment building. Christopher Smith testified that the appellant stated, if we screamed we were going to get it. (T. 319.)
{¶ 8} Carl Smith testified that he is sixteen and has lived with his aunt and uncle since he was nine years old. Carl Smith was walking towards the apartment building where he lived and where his brother was babysitting for Ms. Vovko. He passed Barnett Powell, the appellant's cousin, in the front of the building. Powell was carrying a large object, about the size of a VCR, underneath his jacket. An electrical cord was dangling from the side of this object. Carl Smith jokingly inquired as to whether Barnett Powell had stolen anything. Powell did not respond, but as he kept walking he turned to make sure that Carl Smith was still walking away.
{¶ 9} The hall light was out when Carl entered the apartment building. He entered the apartment of his aunt and uncle and asked why the light was out. Hicks was unaware that there was a problem and then went into the hallway and screwed the light back in. Carl also inquired after the whereabouts of his brother. Smith checked with both his mother and grandmother, but was unable to locate his brother. He returned to his place of residence and did not check further for Christopher until he heard footsteps coming down the stairs. Carl and Greg Hicks checked the hallway and found no one. At that point the appellant came down the stairs, exited the building and sprinted away. After the appellant left, at his uncle's direction, Carl Smith went upstairs to see if Ms. Vovko's door was open. Finding it open, Carl cursorily looked around and then called to his uncle. The second time he entered the apartment, Carl discovered his brother and Ms. Vovko.
{¶ 10} A week or so after this incident, Cleveland Police Detective Bruce Cutlip had Ms. Vovko, Christopher Smith, Carl Smith and Greg Hicks, individually, view a photograph array. The array was on a table and only the faces of the men were showing. The detective testified that the pertinent information on the bottom of the photographs was covered. The victims each identified the appellant as the perpetrator, as did Carl Smith. Detective Cutlip prepared the photo array prior to speaking with Ms. Vovko. He placed the name Eric Powell in the computer system and a match was returned for six or seven men. The name Shack was also placed in the system and returned a match for an Eric Powell. It was on this basis that the detective determined that presenting a photographic array to those involved was indicated.
{¶ 11} The appellant presented the testimony of both his cousin, Barnett Powell, and his fiance, Vanessa Coleman. Barnett confirmed that he lived across the hallway from Ms. Vovko. Barnett testified that he saw the appellant and Ms. Coleman at a bar located on 110th Street and St. Clair Avenue at approximately 1:00 or 1:30 a.m. Barnett Powell denied seeing or speaking with Carl Smith the night of the robbery.
{¶ 12} Ms. Coleman testified that the appellant is her fiance. A daily planner kept by Ms. Coleman was introduced as evidence that she and the appellant were out together the evening of the robbery. The appellant did not leave the bar for more than fifteen to twenty minutes, an insufficient time in which to commit the crimes and return to the bar. During the direct examination of Ms. Coleman by defense counsel, she was asked if she had ever known the appellant to carry a gun. Ms. Coleman responded in the negative (T. 509). On cross-examination, the state followed this line of questioning by inquiring again as to whether Ms. Coleman had ever known the appellant to carry a gun. Again she responded in the negative (T. 519-520). The state elicited impeachment testimony from Coleman indicating that on December 10, 2000, the police were notified of a domestic violence dispute between Coleman and the appellant. The police report indicates that Coleman informed the officer that the appellant had pointed a gun at her face. On the witness stand Ms. Coleman testified that she had informed the police at the time that the appellant pointed a black spatula at her. Ms. Coleman testified that she, not the appellant, had broken the appellant's televisions, and that the appellant did strike Coleman and spray Tilex on her.
{¶ 13} Cleveland Police Officer Stanley Grabowski testified as a rebuttal witness for the state. Officer Grabowski testified that he responded to the domestic violence dispute at Ms. Coleman's residence. At the time, Coleman stated that the appellant entered the apartment without her permission, punched her in the face, poured Tilex on her mid-section, and threw bricks into both televisions. The appellant also absconded with Coleman's purse and threatened her with a gun. Officer Grabowski testified that bleach could be smelled in the apartment, that there were spots on the carpet, and both television sets were broken. There was no indication at the time from Coleman that appellant had been holding a spatula or that she had been the one to break the televisions.
{¶ 14} The state's exhibits, including the photographic array, were submitted into evidence without objection (T. 559).
{¶ 15} The appellant sets forth two assignments of error. The first assignment of error:
 {¶ 16} ERIC POWELL WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BEFORE AN UNBIASED JURY, BY THE REPEATED TESTIMONY OF OTHER BAD ACTS HE HAD ALLEGEDLY COMMITTED BUT OF WHICH HE HAD NEVER BEEN CHARGED OR CONVICTED.
{¶ 17} The appellant asserts that the trial court erred in permitting the introduction of other acts evidence in violation of Evid.R. 404(B). The appellant posits that the appellant's `mug shot' should not have been used as a part of the photographic lineup, and reviewed by the jury, because it informed the jury that the appellant had prior arrests or convictions. The appellant also argues that the evidence regarding the domestic violence complaint filed by his fiance was egregious because he was neither charged nor convicted with any crime.
{¶ 18} Evid.R. 404(B) provides:
 {¶ 19} (B) Other crimes, wrongs or acts. Evidence of the other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
{¶ 20} Where the defense relies upon the theory that someone other than the appellant has committed the crimes, this court found no reversible error where the victims both personally identified the perpetrator and identified the perpetrator after viewing mug shots. State v. Watkins (Sept. 7, 2000), Cuyahoga App. No. 77051. Additionally, it has been held that pursuant to Evid.R. 404(B), evidence of other acts, though criminal, may be admissible as "proof of motive." See State v. Woodard (1993), 68 Ohio St.3d 70. Nevertheless, the question remains how much detail about the prior conviction the state needed to make its point to the jury.
{¶ 21} As with all evidence, other-acts evidence is subject to the relevancy and fairness requirements of Evid.R. 403(A) and must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. State v. Hirsch (1998), 129 Ohio App.3d 294. The decision whether to admit or exclude relevant evidence under Evid.R. 403(A) rests within the discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. An appellate court will not disturb the trial court's decision to admit or exclude evidence absent an abuse of discretion and a showing that the accused has suffered material prejudice. Hirsch, supra, citing to State v. Martin (1985), 19 Ohio St.3d 122, 129, certiorari denied (1986), 474 U.S. 1073,106 S.Ct. 837, 88 L.Ed.2d 808.
{¶ 22} In the case sub judice, the record reveals that Ms. Vovko testified as to her immediate recognition of the appellant upon entry into her apartment. Mr. Christopher Smith recognized the appellant shortly thereafter. The admission of the victims' identification of the appellant through the photographic array was not error given the fact that the appellant contended that he was not the perpetrator and the photo identification by the victims indicated that they were not mistaken.
{¶ 23} At trial, the photographic array was submitted to the jury without any personal identification of the men in the pictures. No objection was raised by the appellant as to this process for submitting the photographs to the jury. Since the jury had no concrete information upon which to make any assumptions regarding any of those men, let alone the appellant, no prejudice accrued to the appellant.
{¶ 24} As to the testimony regarding the domestic violence perpetrated by the appellant on his fiance, Ms. Coleman, this court finds that while perhaps some of the evidence should have been omitted, there was no prejudice to the appellant. The evidence regarding the appellant's possession of a gun was first introduced to the jury during the direct examination of the appellant's alibi witness, Ms. Coleman. The state was permitted under Evid.R. 607[1] to question the credibility of Ms. Coleman and her statement that she had never observed the appellant with a gun. Additionally, the testimony indicating that the appellant broke his fiance's television was relevant and admissible to show motive. However, the details contained in the police statement regarding the appellant's physical assault upon his fiance was not required to prove the state's case. In light of the overwhelming evidence of the appellant's guilt, this small point of evidence is not sufficient to reverse the jury's finding.
{¶ 25} The appellant's first assignment of error is overruled.
{¶ 26} The second assignment of error:
 {¶ 27} ERIC POWELL HAS BEEN DEPRIVED OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW BY HIS CONVICTIONS WHICH WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE TO PROVE HIS GUILT BEYOND A REASONABLE DOUBT.
{¶ 28} The appellant argues that the operability of the firearm he allegedly carried during the commission of these crimes was not sufficiently proven by the state. The appellant points out that the gun was never recovered and that the circumstantial evidence was not supported by a reasonable inference of operablity in this instance.
{¶ 29} In State v. Thompkins (1997), 78 Ohio St.3d 380, the Ohio Supreme Court considered a case substantially on point. In Thompkins the Court clarified the distinction between reviewing questions of manifest weight of the evidence and questions of sufficiency of the evidence and found that with respect to sufficiency of the evidence, in essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. at 386. In addition, a conviction based upon legally insufficient evidence is a denial of due process. Thompkins, supra, citing to Tibbs v. Florida (1982), 457 U.S. 31, 45. As Justice Cook succinctly stated in the concurrence of Thompkins, a challenge to the sufficiency of evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. Courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.
{¶ 30} With this evidentiary standard in mind, we turn once again to Thompkins for guidance in reviewing the question of the required evidence to prove the operablity of the firearm. The court held at syllabus one:
 {¶ 31} A firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm. (State v. Murphy [1990], 49 Ohio St.3d 206, 551 N.E.2d 932, State v. Jenks [1991], 61 Ohio St.3d 259, 574 N.E.2d 492, and State v. Dixon [1995], 71 Ohio St.3d 608, 646 N.E.2d 453, followed; R.C. 2923.11[B][1] and [2], construed and applied.)
{¶ 32} In the matter at hand, the victims testified that the firearm was pointed directly at them and that they were in fear for their safety. In addition, Mr. Christopher Smith described the gun about six inches long, short, and black. When asked if it was a revolver or automatic, he stated that the gun spun. Mr. Smith stated that the gun was pointed at both victims, that he was in shock, and testified that appellant threatened that if they screamed they were going to get it (T. 319). Ms. Vovko testified that the appellant had a small black revolver in his hand and was waving it back and forth in front of both her and Christopher Smith. She knew it was a revolver because it would turn and click (T. 224). Ms. Vovko was frightened. (T.270.)
{¶ 33} Based upon this testimony, it is clear that the victims testified that the appellant was carrying a firearm, the firearm was waved at both of them, the victims both identified the firearm as a revolver, and they were threatened by the appellant. This circumstantial evidence was sufficient for the prosecutor to meet its burden of production.
{¶ 34} The appellant's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J., and JAMES J. SWEENEY, J., CONCUR.
[1] {¶ a} Evid.R. 607:
 {¶ b} (A) Who May Impeach. The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. This exception does not apply to statements admitted pursuant to Evid. R. 801(D)(1)(a), 801(D)(2), or 803.
 {¶ c} (B) Impeachment: reasonable basis. A questioner must have a reasonable basis for asking any question pertaining to impeachment that implies the existence of an impeaching fact.