Wiley DAVIS, Jr., Petitioner,

v.

Betty MITCHELL, Warden, Respondent.

No. 1:99–CV–1649.

United States District Court, N.D. Ohio, Eastern Division.

Aug. 23, 2000.

John P. Parker, Cleveland, OH, Patricia A. Millhoff, Akron, OH, for Wiley Davis, Jr., Petitioners.

Charles L. Wille, Office of the Attorney General, Capital Crimes Section, Columbus, OH, Jon W. Oebker, Office of the Attorney General, Cleveland, OH, Matthew J. Lampke, Office of the Attorney General, Employment Law Section, Columbus, OH, for Betty Mitchell, Warden, Respondents.

## OPINION

GWIN, District Judge.

In this death penalty case, Petitioner Wiley Davis, Jr., petitions for a writ of habeas corpus [Doc. 26]. In support of his petition, Davis says constitutional error attended his conviction and resulting death sentence.

Respondent Warden Betty Mitchell says Petitioner Davis is not entitled to a writ of habeas corpus. First, Respondent Mitchell maintains that Petitioner Davis has procedurally defaulted many of his claims for relief. With regard to the remaining claims, Respondent Mitchell argues that Petitioner Davis either fails to show any constitutional violation or raises claims not cognizable on habeas review.

For the reasons set forth below, the Court finds that Petitioner Davis has failed to establish his right to a writ of habeas corpus. Accordingly, the Court denies Davis's petition.

### I. Overview

In evaluating the petition, the Court first describes the facts relating to Petitioner Davis's crime of conviction. Second, the Court reviews Davis's direct appeals and attempts to receive post-conviction relief. Third, the Court decides whether Davis has exhausted his state remedies and has procedurally defaulted any of his grounds for relief. Fourth, the Court considers Davis's request for an evidentiary hearing. Fifth, the Court sets forth the standard of review applicable to Davis's petition. Finally, the Court substantively reviews Davis's grounds for relief.

### II. Factual Background

Currently, Petitioner Wiley Davis awaits execution for the murder of Amy Perkins. A jury found that Davis murdered Perkins on November 26, 1991, shortly after kidnapping her from a downtown Cleveland parking lot.

On that date, Davis was observed at the kidnapping scene at 8:15 a.m. At a downtown Cleveland parking lot, parking lot patron Mattie Baker observed Davis pacing back and forth in the parking lot as she parked her car. By the time Baker exited her car, Davis was no longer in sight.

Having forgotten her parking space number, Baker soon returned to her vehicle. As she returned, Baker saw Davis sitting in the driver's seat of the car parked next to her vehicle. Baker described the car as a small gray Toyota with Texas license plates. Amy Perkins owned the vehicle. Baker testified that a white female sat in the passenger's seat of the car. The female had a "terrified look" on her face, prompting Baker to seek help. However, the car left the parking lot before Baker was able to find any assistance.

Within an hour of Baker's encounter with Davis, Gwendolyn Brice saw Amy Perkins's car sitting at a stop sign near Brice's home. She saw a woman in the car motion as if to push something away just before a "pop" sound emanated from the vehicle. Brice then saw the passenger side window shatter and the woman's head drop.

Shortly thereafter, Marjorie Johnson arrived at Brice's house and parked behind Perkins's car. Johnson saw a black male in the driver's seat and a white female in the passenger's seat. The female's head was hanging out of the window. Upon seeing Johnson, the driver pulled away at a high rate of speed.

Nancy Brown next spotted Perkins's vehicle as she waited with her son and his friends for their school bus to arrive. Brown saw the car cross the intersection near the bus stop while the driver struggled to close the passenger's door.

After the car passed, the children told Brown they saw someone lying in some nearby bushes. Brown ran to the bushes, where she discovered a nude white female struggling to speak. After calling 911 from a house in the area, Brown covered the woman with a borrowed blanket.

The ambulance arrived and took the woman to the hospital, where she eventually died. David Perkins later identified the woman as his wife, Amy Perkins.

Soon after the shooting, the police located Amy Perkins's gray Toyota in the parking lot of a deli. The car contained shattered glass and fresh blood. Approximately five to ten feet from the driver's side of the car, the police recovered a Federal .32 caliber shell casing. Inside the car, the police found Amy Perkins's clothing, checkbook, and some personal items. They appeared to have been rifled through.

Later that morning, Petitioner Davis appeared at his sister's house. Davis's sister lived approximately three hundred yards from the Toyota's final location. After coming into his sister's house, Davis told his sister and her boyfriend that he had accidentally shot someone during an altercation. He then asked his sister's boyfriend, Alfonso Herring, Jr., to give him a change of clothes and to hide his gun. Herring agreed. After changing out of his blood-stained sweatsuit, Davis left his sister's home at 9:40 a.m.

A few hours later, Cleveland police officers arrested Davis at his girlfriend's house. A search of the house uncovered a box of Federal brand .32 caliber ammunition and a blood-stained right shoe. Herring later gave to the police Davis's gun and the clothes Davis had worn on the morning of Amy Perkins's murder.

Firearm testing showed that the gun Davis gave to Herring had fired the casing found in the deli parking lot. And the Cuyahoga County Coroner's Officer identified the blood stains on Davis's shoe and sweatsuit as Type O—the same type as Amy Perkins.

Regarding the state's later claim that Amy Perkins was murdered during the course of a robbery, the police did not recover any jewelry from the car or Perkins's body. However, David Perkins testified that his wife always wore a custom-made engagement wedding ring and a Rolex watch. He said these items had been missing since Amy's death.

On December 5, 1991, the Cuyahoga County Grand Jury indicted Davis on a six-count indictment. The first two counts charged aggravated murder under Ohio Revised Code § 2903.01(A) and (B). Each count carried three felony-murder capital specifications—kidnapping, aggravated robbery, and rape or attempted rape. The remaining counts charged kidnapping[1], rape[2], aggravated robbery[3], and having a weapon while under a disability.[4]

Davis was tried before the Cuyahoga County Court of Common Pleas. The jury convicted Davis on all counts and all specifications thereto. Following the jury's recommendation, the trial court sentenced Davis to death. The court also ordered Davis to spend the twenty-sixth day of each month in solitary confinement until his execution.

### III. Procedural Background

Following his conviction, Petitioner Davis appealed to the Cuyahoga County Court of Appeals. In 1995, the appellate court affirmed Davis's conviction, and set

---

1. *See* OHIO REV. CODE § 2905.01.

2. *See* OHIO REV. CODE § 2907.02.

3. *See* OHIO REV. CODE § 2911.01.

4. *See* OHIO REV. CODE § 2923.13.

aside only that portion of Davis's sentence calling for his placement in solitary confinement on the anniversary of Amy Perkins's death.

After the Cuyahoga County Court of Appeals affirmed his conviction, Petitioner Davis sought review with the Ohio Supreme Court. In 1996, the Ohio Supreme Court affirmed both Davis's conviction and sentence.

Davis next filed a state-court petition for post-conviction relief. After the state trial court denied the petition, Davis sought review with the Cuyahoga County Court of Appeals. In 1998, the appellate court affirmed the trial court's decision. Davis then filed an appeal with the Ohio Supreme Court. The Ohio Supreme Court declined to exercise jurisdiction.

On January 7, 2000, Davis filed his petition for a writ of habeas corpus. The Court now considers his petition.

## IV. Exhaustion and Procedural Default

### A. Exhaustion

A habeas corpus petitioner must exhaust his available state remedies before petitioning for a writ of habeas corpus. *See* 28 U.S.C. § 2254(b). To determine whether the exhaustion requirement is met, the Court examines whether the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

As explained in Part II, Petitioner Davis has pursued all opportunities for relief at the state level, both on direct appeal and in post-conviction proceedings. Petitioner Davis has thus exhausted available state court remedies.

### B. Procedural Default

■ Federal courts "will not review questions of federal law decided by a state court if the decision of that court rests upon a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Applied to the habeas context, this doctrine stops federal court review of claims that a state court has declined to address because of the petitioner's noncompliance with a state procedural requirement. *See Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). "In these cases, the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730, 111 S.Ct. 2546.

■ The United States Court of Appeals for the Sixth Circuit has established a four-step analysis to determine whether a claim has been procedurally defaulted. *See Maupin v. Smith,* 785 F.2d 135 (6th Cir.1986). Under this test, the Court must determine (1) whether the petitioner failed to comply with an applicable state procedural rule; (2) whether the state courts actually enforced the state procedural sanction; (3) whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and, if the previous elements are met, (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.*

Respondent Mitchell contends that Petitioner Davis has procedurally defaulted Claims for Relief 2, 4 (¶¶ 18–29), 5, 8, 12 (¶¶ 85–90), 18 and 19. According to Respondent Mitchell, Davis never presented Claim 12 (¶ 86) to the state courts, and thus is barred from pursuing this claim in his habeas petition. Respondent Mitchell says the remaining claims are barred by either Ohio's contemporaneous objection rule or the doctrine of *res judicata.* The Court considers each of these arguments in turn.

#### 1. Claims Never Presented to State Courts

Respondent Mitchell states that Claim 12 (¶ 86) was never raised in state court. The Court finds that the arguments made in both ¶ 86 and ¶ 91 of Claim 12 are barred.

In ¶ 86, Petitioner Davis argues that the prosecution "elicited testimony designed to

inflame and prejudice the jury when the jury was advised that the victim's husband had requested, and was granted the opportunity to speak face to face with the defendant." After reviewing Davis's direct appeals, the Court finds that Davis ·has raised this argument for this first time in his habeas petition.

In ¶ 91, Petitioner Davis says the prosecution "improperly argued that the juries [sic] verdict was only a recommendation in an effort to lead the jury to believe that the responsibility for determining the appropriateness of a death sentence rests elsewhere." Davis did not raise this argument on direct appeal. Davis argued only that the trial court improperly instructed the jury as to its advisory role in recommending a penalty; he never claimed the prosecution made any improper argument regarding the jury's role.

■ Ordinarily, issues raised for the first time in a habeas corpus petition are remanded to the state court. However, Petitioner Davis is barred from presenting these arguments in state court because he had the opportunity, but failed to do so, during his state court proceedings. *See State v. Perry,* 10 Ohio St.2d 175, 179, 226 N.E.2d 104, 107 (1967) (holding that a constitutional issue cannot be considered in post-conviction proceedings where they have already been or could have been fully litigated before judgment of conviction or on direct appeal from that judgment).

■ A claim not originally brought in state court that in turn has no state court remedy is procedurally barred. *See Riggins v. McMackin,* 935 F.2d 790 (6th Cir. 1991). Accordingly, the Court finds that the arguments raised in ¶ 86 and ¶ 91 of Claim 12 are procedurally defaulted.[5]

---

**5.** Even if not barred, these claims lack merit. The Court finds nothing inflammatory in the prosecution's remarks about David Perkins's face-to-face meeting with Petitioner Davis. This comment in no way infected Davis's trial with sufficient prejudice as to deny Davis due process. *See Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

#### 2. Contemporaneous Objection Rule

Respondent Mitchell argues that Claim 2 and portions of Claim 12 (¶¶ 87–90) are procedurally defaulted under Ohio's contemporaneous objection rule. The Court finds that all but Claim 12 (¶ 88) are barred.

■ Under Ohio's contemporaneous objection rule, an appellant who fails to either object or request a specific instruction at trial waives later review of the issue unless he shows plain error. *See State v. Smith,* 89 Ohio St.3d 323, 332, 731 N.E.2d 645, 655 (2000). Plain error involves an error that so adversely affects the rights of the accused "as to undermine the fairness of the guilt-determining process." *State v. Swanson,* 16 Ohio App.3d 375, 377, 476 N.E.2d 672, 675 (1984).

■ The Ohio Supreme Court found that Davis had failed to raise a timely objection with regard to the allegations he sets forth in Claim 2 and all but one of the allegations he raises in Claim 12 (¶¶ 87–90). The court then reviewed Davis's claims for plain error and found no error so serious that it undermined the fairness of Davis's trial.

■ "Default imposed for failure to object contemporaneously . . . is an adequate and independent state ground to bar federal habeas review absent a showing of cause and prejudice." *Scott v. Mitchell,* 209 F.3d 854, 867 (6th Cir.2000) (citing *Engle v. Isaac,* 456 U.S. 107, 124–29, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)). Petitioner Davis has made no attempt to show either cause or prejudice regarding his failure to raise contemporaneous objec-

And contrary to Davis's contention in ¶ 91, the trial court properly instructed the jury regarding its advisory role in sentencing Petitioner Davis. The court merely informed the jury that the trial court would ultimately sentence Davis. This is an accurate statement of Ohio law. *See* OHIO REV. CODE § 2929.03(D)(3). Such an instruction does not run afoul of the Constitution.

tions at trial. Thus, Claims 2 and 12 (¶¶ 87 and 89–90) are procedurally defaulted.[6]

Respondent Mitchell also contends that Petitioner Davis has procedurally defaulted Claim 12 (¶ 88). In this ground for relief, Davis alleges "[t]he prosecutor improperly argued that the wound in the victim's head was so large and the day so cold that one could see steam flowing from her head." The Ohio Supreme Court found that Davis had objected to this comment at trial and proceeded to review the claim on its merits. Thus, Claim 12 (¶ 88) is preserved for habeas review.

### 3. Res Judicata

Respondent Mitchell states that Claims 4 (¶¶ 18, 27, and 29), 5, 8, 12 (¶ 85), 18, and 19 are barred based on the doctrine of *res judicata*. In response, Petitioner Davis argues only that *res judicata* is not an adequate and independent ground to bar federal habeas review. The Court disagrees.

■■■ Under Ohio law, an issue which is not raised by a petitioner on direct appeal is subsequently barred based on the doctrine of *res judicata*. *See, e.g., State v. Combs*, 100 Ohio App.3d 90, 97, 652 N.E.2d 205, 209 (1994) (holding that post-conviction relief is not available for claims that could have been raised on direct appeal based on *res judicata* ); *Perry*, 10 Ohio St.2d at 176, 226 N.E.2d at 105–106 (syllabus). Such issues are considered waived for federal habeas purposes. *See Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir.1998) (quoting *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994)).

■■■ Challenging this authority, Petitioner Davis says *res judicata* is not an "adequate" ground for foreclosing habeas review. Davis claims that *res judicata* is not adequate because Ohio courts do not consistently apply the rule in capital cases. This argument is incorrect.

The Sixth Circuit has recognized *res judicata* as an independent and adequate ground upon which to stop consideration of habeas claims. *See Schotten*, 146 F.3d at 332; *Wong v. Money*, 142 F.3d 313, 322

---

**6.** Again, these claims would not avail Petitioner Davis in any event. In Claim 2, Davis takes issue with the wording of one of the counts in the indictment. Count two charges Davis with killing Perkins in connection with the commission of "Kidnapping and/or Aggravated Robbery and/or Attempted Rape." According to Davis, the use of the disjunctive led the jury to believe it did not have to unanimously find Davis committed one of the listed felonies.

But the Ohio Supreme Court convincingly explained why the alleged wording error was not outcome-determinative:

> Although Count Two was worded disjunctively, both it and Count One carried a separate felony-murder specification for each of the felonies alleged. The jury convicted Davis of each specification individually. The jury also separately convicted Davis of kidnapping (Count Three) and aggravated robbery (Count Four). Because the jury made a separate, unanimous finding of guilt as to each of the predicate felonies, there is no plain error.

*State v. Davis*, 76 Ohio St.3d 107, 118, 666 N.E.2d 1099, 1109 (1996).

Davis also argues in Claim 2 that the trial court should not have imposed the death penalty without the jury first finding that he acted with premeditation or that he was the principal offender. *See* OHIO REV. CODE § 2929.04(A)(7). However, in finding Davis guilty of aggravated murder, the jury necessarily concluded Davis acted with prior calculation and design. And in the absence of any evidence suggesting that a second actor participated in committing the aggravated murder, the jury's guilty verdict includes a finding that Davis acted as the principal offender.

In Claim 12 (¶ 87), Davis contends that the prosecution inflamed the jury by stating that Perkins's husband had to live with his wife's horrible death. This comment, even if improper, did not infect the trial with such extensive unfairness so as to deny Davis his due process rights. *See Wainwright*, 477 U.S. at 181, 106 S.Ct. 2464.

In Claim 12 (¶¶ 89, 90), Davis says the prosecution improperly argued nonstatutory aggravating factors. Though perhaps a violation of state law, the prosecution's comments do not run afoul of federal law. And absent a violation of federal law, Davis is not entitled to habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

(6th Cir.1998). Ohio's "abundance of caution" in capital cases does not imply that this Court may ignore Ohio's "sovereign decision founded upon its own procedural rule." *Mitchell,* 209 F.3d at 869; *see also Amos v. Scott,* 61 F.3d 333, 342 (5th Cir. 1995) (stating that "an occasional act of grace by a state court in excusing or disregarding a state procedural rule does not render the rule inadequate...").

Petitioner Davis next argues that *res judicata* should not foreclose federal review in that "Ohio's post-conviction bar of res judicata does not meet the due process requirements because it is designed to create procedural defaults for the sake of judicial convenience." Yet Davis does not offer any coherent argument as to how Ohio's use of *res judicata* runs afoul of due process.

 Accordingly, the Court finds that *res judicata* is an " 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim." *Maupin,* 785 F.2d at 138. Claims 4 (¶¶ 18, 27, and 29), 5, 8, 12 (¶ 85), 18, and 19 are thus barred.[7]

## V. Evidentiary Hearing

Petitioner Davis asks this Court to delay ruling on his petition in order to "[c]onduct a hearing at which proof may be offered concerning the allegations of this petition...." However, Davis offers no argument in support of his request. And the Court's independent review reveals no basis for conducting an evidentiary hearing.

 To show entitlement to an evidentiary hearing, a petitioner must overcome two obstacles. First, if the petitioner failed to develop the factual basis of his claim in state court, a federal habeas court is generally prohibited from conducting an evidentiary hearing.[8] *See* 28 U.S.C. § 2254(e)(2). Second, even if he did not fail to develop the factual basis of his claim, a petitioner must still show that there is a factual dispute that "if resolved

---

7. Like Petitioner Davis's other defaulted claims, these claims lack merit. In Claims 4 (¶¶ 18, 27, and 29), 5, 8, and 12 (¶ 85), Davis argues that his counsel provided ineffective representation. But Davis does not show any actual prejudice. The overwhelming evidence of Davis's guilt strongly suggests any error on the part of his counsel did not render the jury's guilty verdict unreliable. Likewise, the Court remains unconvinced that Davis's counsel made errors so serious during the mitigation phase so as to render the jury's death penalty recommendation invalid. *See Strickland v. Washington,* 466 U.S. 668, 685, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In Claim 18, Davis says the prosecution failed to provide discovery regarding a log book from the Blue Cross building located near the scene of the kidnapping. Davis insists this log book contains a description of another suspect. The prosecution's failure to produce the log book, according to Davis, violates the Supreme Court's holding in *Brady v. Maryland,* where the Court held that the prosecution must produce evidence that is favorable to the defendant when such evidence is material to guilt or punishment. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Yet Davis has not offered any evidence showing a "reasonable probability" that the outcome of his trial would have been different had the prosecution produced the

log book. *United States v. Bagley,* 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Absent such evidence, Davis cannot establish a *Brady* violation.

In Claim 19, Davis contends that death by electrocution constitutes cruel and unusual punishment. But neither the Supreme Court nor the Sixth Circuit have ever held as much. In the absence of any supporting authority, Davis's argument fails.

8. When a petitioner has failed to develop the factual basis of his claim, the AEDPA allows a court to conduct an evidentiary hearing only if the petitioner shows that:

(A) the claim relies on—
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

in the petitioner's favor, would entitle [the petitioner] to relief and [that] the state has not afforded the petitioner a full and fair hearing." *Murphy v. Johnson,* 205 F.3d 809, 815 (5th Cir.2000); *see also Townsend v. Sain,* 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) ("Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in state court. . . ."), *overruled on other grounds by Keeney v. Tamayo–Reyes,* 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992).

■■■ Here, the Court finds no material factual dispute requiring an evidentiary hearing. The record before the Court provides a complete basis upon which to consider Petitioner Davis's grounds for relief. Thus, even assuming Davis did not fail to develop the factual basis of his claim and that the state courts denied Davis a full and fair hearing, an evidentiary hearing is not appropriate.

### VI. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standard with which this Court reviews Petitioner Davis's petition. The AEDPA provides in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Here, Petitioner Davis does not challenge the state court's factual findings.

Thus, the standard of review described in § 2254(d)(1), rather than § 2254(d)(2), applies to his petition.

The United States Supreme Court recently examined the applicability of § 2254(d)(1). In *Williams v. Taylor,* the Court identified the different circumstances in which a federal habeas court must apply either the "contrary to" or the "unreasonable application of" clause in § 2254(d)(1):

> Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).

■■■ Here, Petitioner Davis does not challenge the state court's articulation of the applicable legal principles. Instead, Davis seeks review of the state court's application of those principles to the facts of his case. Thus, the Court will review Davis's petition under § 2254(d)(1)'s "unreasonable application" clause.

Until *Williams,* federal courts generally applied a subjective standard of reasonableness under the "unreasonable application" clause. For instance, the Sixth Circuit has held that a writ of habeas corpus "will issue if the unreasonableness of the state court's application of clearly-established precedent is not debatable among reasonable jurists." *Tucker v. Prelesnik,* 181 F.3d 747, 753 (6th Cir.1999).

However, in *Williams,* the Supreme Court rejected this approach. Rather than declare an application of law reason-

able simply because one jurist has employed a similar application, the Court endorsed an objective standard for assessing a state court's application of controlling precedent. *See Williams*, 120 S.Ct. at 1521.

■ Thus, the Court's review of Petitioner Matthews's petition is not *de novo*. Rather, the Court will determine whether the state court's application of law is objectively reasonable.

## VII. Grounds for Relief

The Court now reviews Petitioner Davis's grounds for relief. As explained below, the Court finds that Davis fails to show the state courts' application of controlling law is in any way unreasonable.

### A. Claim 1

Petitioner Davis first contends that the trial court wrongly refused to move his trial to a venue not "permeated" with pretrial publicity. Davis insists that excessive pretrial publicity deprived him of his constitutional right to a fair trial.

■ Under certain circumstances, pretrial publicity can deprive a defendant of his right to a fair trial. Specifically, the United States Supreme Court has held that pretrial publicity undermines the fairness of the judicial process when it is either "inherently prejudicial" or when it results in "actual prejudice."

■ Publicity surrounding a judicial proceeding is inherently prejudicial when it fosters a circus-like atmosphere in the courtroom, draining the proceeding of the "solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of a mob." *Murphy v. Florida*, 421 U.S. 794, 799, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). For example, in *Rideau v. Louisiana*, the Supreme Court found such inherent prejudice when a local television station aired a twenty-minute videotaped interrogation during which the defendant confessed to the crime for which

he was eventually convicted. 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963).

■ Even if not so egregious as to create inherent prejudice, pretrial publicity may nevertheless give rise to an inference of actual prejudice. The nature and extent of pretrial publicity may have such a substantial effect on prospective jurors, as evidenced by the voir dire testimony, that a "fair trial [was] impossible." *Murphy*, 421 U.S. at 798, 95 S.Ct. 2031. In *Irvin v. Dowd*, the United Supreme Court found extensive coverage of a defendant's past convictions and his offer to plead guilty to avoid a death sentence prevented a fair trial when nearly all of the prospective jurors reported some belief in the defendant's guilt. 366 U.S. 717, 727, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).

Here, Petitioner Davis insists that pretrial publicity rendered his trial unfair. Davis says that near constant media coverage of the murder of Amy Perkins, whose husband was a popular radio personality in Cleveland, tainted the venue in which he was tried and convicted. This coverage, according to Davis, included "information about [his] prior criminal record, other attempted rapes in downtown Cleveland and general information about the lack of safety in the downtown area." Davis says the media coverage was so pervasive that only seven of the seventy potential jurors reported no previous knowledge regarding the case.

The Ohio Supreme Court considered and rejected Petitioner Davis's argument. The court found no merit in Davis's claim of inherent prejudice. Although pretrial publicity included coverage of Davis's criminal record, the court observed that this alone would not give rise to a presumption of prejudice. And as for actual prejudice, the court emphasized the trial court's careful screening of potential jurors and exclusion of those jurors who had formed fixed opinions as to Davis's guilt.

■ The Court finds that the Ohio Supreme Court reasonably applied control-

ling precedent. The court correctly noted that publication of a defendant's prior convictions will not, in and of itself, create inherent prejudice. And other grounds for finding inherent prejudice are lacking. Davis's trial was in no way the carnival-like exercise described in *Rideau*.

■ Nor is there any support for a finding of actual prejudice. The trial court took various measures to ensure that pretrial publicity would not prejudice Petitioner Davis's trial. For example, the court granted a continuance to allow the pretrial publicity to wane. Thus, while the majority of the publicity occurred in November and December 1991, the trial did not take place until May 1992.

Further, the trial court made reasonable efforts to ensure the jurors´ selected to hear Davis's case were not biased against him. The trial court individually questioned many jurors as to the impact of the pretrial publicity. The broad majority of prospective jurors had only vague recollection of reports of the killing. The court excused the few jurors who had formed fixed opinions as to Davis's guilt. Also, the court appointed a jury selection specialist to assist Davis in choosing a favorable jury.

■ In his petition for habeas corpus relief, Petitioner Davis shows no evidence that members of the venire had knowledge or beliefs that prevented them from fairly deciding his case upon the evidence presented at the trial. *See Dobbert v. Florida*, 432 U.S. 282, 303, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977) (rejecting claim of prejudice where petitioner failed to show "constitutional unfairness as to the method of jury selection or as to the character of the jurors actually selected"). Absent such a showing, the Constitution "presupposes that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case." *Lockhart v. McCree*, 476 U.S. 162, 184, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); *Ross v. Oklahoma*, 487 U.S. 81, 86, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988).

Petitioner Davis can show only that some of the veniremen were familiar with the case. But "[q]ualified jurors need not ... be totally ignorant of the facts and issues involved." *Dobbert*, 432 U.S. at 302, 97 S.Ct. 2290. Davis presents no evidence suggesting that any of the jurors ultimately seated had any opinion as to his guilt. Indeed, Davis never challenged any of these jurors for cause, and used only half of his peremptory challenges.

Accordingly, the Court finds no merit in Claim 1.

### B. Claim 3

Petitioner Davis next says the jury did not have sufficient evidence to find him guilty of the aggravated robbery specification. He thus says his conviction violated his rights under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

■ A federal court can overturn a state jury decision only in certain circumstances. The United States Court of Appeals for the Sixth Circuit has held that a verdict must stand if "after viewing the evidence (and the inferences to be drawn therefrom) in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir.1995). Thus, the federal court's job in reviewing a petition for habeas corpus is not to re-evaluate the evidence and reach its own conclusion, but instead to review the record and determine whether a reasonable jury could find all of the elements necessary to prove the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Petitioner Davis says that no reasonable juror could reach the conclusion that he

robbed Amy Perkins during her kidnapping and murder. Davis says that no reasonable jury would credit David Perkins's testimony that his wife "habitually wore" the missing ring and watch. Also, Davis points out that no one directly testified that Perkins wore the ring and watch on the day of her death, only that Perkins's body was not wearing the ring and the watch and they were never found in her house. Consequently, Davis says that the lack of direct evidence proving that Perkins wore the missing ring and watch is enough to remove the aggravated robbery specification from his conviction.

The Ohio Supreme Court rejected Davis's argument and upheld the jury's verdict. The court held that the jury made reasonable inferences from the evidence presented. From the testimony at trial, the jury inferred that Perkins was wearing the missing ring and watch at the time of her murder. Presumptively, the jury made this finding in reliance upon Amy Perkins's husband's testimony that she always wore these items. Combined with the fact that the ring and watch were never recovered, and the testimony that Perkins's car was "rifled through," the court determined that the jury reached a reasonable conclusion that Davis stole the items. Although the evidence was circumstantial, the court noted that circumstantial evidence is given the same weight as direct evidence.

■ This Court finds the Ohio Supreme Court's ruling reasonable. The prosecution presented evidence that (1) Perkins habitually wore the ring and watch, (2) the belongings in Perkins's car were rifled through, (3) Perkins was not wearing any jewelry when found, and (4) the items are still missing. This convincing circumstantial evidence allowed a reasonable jury to infer that Davis stole the items. *See U.S. v. Farley,* 2 F.3d 645, 650 (6th Cir.1993) (stating that "[c]ircumstantial evidence is entitled to the same weight

as direct evidence in this calculus [of] determining sufficiency").

Hence, the Court rejects Claim 3.

### C. Claims 6, 7, 9, 10

Petitioner Davis raises several claims regarding alleged deficiencies with Ohio's post-conviction procedures. Specifically, Davis says his constitutional rights were violated during the state post-conviction process when the trial court prevented Davis from interviewing jurors, refused an evidentiary hearing, and administered what Davis claims was a "meaningless" post-conviction procedure.

■ The Sixth Circuit has ruled that a petitioner may not seek habeas relief based on alleged deficiencies in a state's post-conviction procedures. *See Kirby v. Dutton,* 794 F.2d 245 (6th Cir.1986). Rather, a petitioner is entitled to habeas relief only upon showing that an error of federal law makes his conviction and resulting incarceration illegitimate. *See id.* at 247 (observing that a petition for a writ of habeas corpus is "not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings ... because the claims address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration").

In *Kirby,* the prisoner filed a petition for habeas corpus on the grounds that he had inadequate assistance of counsel at his post-conviction hearing. *See id.* at 246. The Sixth Circuit ultimately denied the petitioner's appeal because his claim related to his state post-conviction proceeding rather than his actual incarceration. *See id.* at 247. The court emphasized that an error associated with a state post-conviction proceeding is not cognizable on habeas review:

[E]ven where there may be some error in state post-conviction proceedings, this would not entitle appellant to federal habeas corpus relief since appellant's claim here represents an attack on a

proceeding collateral to detention of appellant and not on the detention itself. *Id.* (quoting *Williams v. Missouri,* 640 F.2d 140 (8th Cir.1981)).

■ The claims that Petitioner Davis makes in Claims 6, 7, 9, and 10 all relate to alleged constitutional errors during his state post-conviction proceeding. As such, these claims are not cognizable on federal habeas review. Accordingly, the Court rejects these four claims for relief.

### D. Claim 11

Petitioner Davis contends that the trial court deprived him of a fair trial by improperly instructing the jury regarding the appropriate aggravating factors to consider in deciding whether to recommend the death penalty. In particular, Davis says the trial court erred in referring to the specifications in the indictment as "aggravating circumstances."

The Ohio Supreme Court rejected Petitioner Davis's argument without opinion. Likewise, on direct appeal, the Cuyahoga County Court of Appeals found that any error in the instructions did not actually prejudice Davis.[9] The Court finds nothing unreasonable in the state courts' rejection of Davis's claim.

Ohio Revised Code § 2929.04(A) sets forth various aggravating circumstances a jury must consider in deciding whether to recommend the death penalty. Some of these aggravating circumstances were included as specifications in Petitioner Davis's indictment. However, the firearm specification in Davis's indictment is not listed as an aggravating factor in Ohio Revised Code § 2929.04(A).

Thus, the trial court erred when it referred to the specifications in the indictment as "aggravating circumstances." Davis says this error resulted in actual prejudice. According to Davis, the trial

court's instruction led the jury to consider a nonstatutory aggravating factor in deciding whether to recommend the death penalty.

■ As an initial matter, Davis fails to show how the trial court's error in instructing the jurors on state law gives rise to a federal constitutional violation. The simple fact that the instructions may have led the jurors to consider nonstatutory aggravating circumstances does not establish such a violation. In *Zant v. Stephens,* the United States Supreme Court found that a jury may consider nonstatutory aggravating factors in deciding which defendants receive the death penalty:

> Our cases indicate, then, that statutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they circumscribe the class of persons eligible for the death penalty. But the Constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among that class, those defendants who will actually be sentenced to death. What is important at the selection stage is an individualized determination on the basis of the character of the individual and the circumstances of the crime.

462 U.S. at 878, 103 S.Ct. 2733.

■ Even if Petitioner Davis's argument raised a federal constitutional issue, the Court finds reasonable the Ohio Supreme Court's conclusion that the trial court's error did not result in any prejudice to Davis. Prior to the penalty phase, the trial court properly instructed the jury as to aggravating circumstances the jury should consider in deciding whether to recommend that Petitioner Davis receive the death penalty. These instructions remedied any earlier misstatement by the trial court.

---

**9.** *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (stating that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon that ground").

For this reason, the Court rejects Claim 11.

### E. Claim 12 (¶ 88)

Petitioner Davis says he was denied his constitutional right to a fair trial because of certain inappropriate comments made by the prosecution during closing arguments. In particular, Davis says the prosecution made inflammatory comments regarding the gruesome nature of Amy Perkins's murder.

A prosecutor's improper comments can deprive a defendant of a fair trial. *See Wainwright*, 477 U.S. at 181, 106 S.Ct. 2464. But such a deprivation does not occur simply because a prosecutor's comments are "undesirable or even universally condemned." *Id.* (internal quotations omitted). Instead, the relevant inquiry "is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).

The Ohio Supreme Court found no merit in Petitioner Davis's argument regarding the prosecution's statements concerning Amy Perkins's death. The court acknowledged that the prosecution ought not have made comments emphasizing the gruesome nature of the crime. However, the court concluded that, in light of the evidence supporting Davis's guilt, the prosecution's statements did not have a prejudicial effect.

The Court finds this conclusion reasonable. First, the prosecution's statements were not necessarily inflammatory. The prosecution noted that Amy Perkins's body had been dumped naked on the street. This reference supported the prosecution's claim that Petitioner Davis had attempted to rape Perkins. Also, the prosecution's comment regarding Perkins's head wound supported the theory that Davis shot Perkins at close range.

Second, the prosecution's comments did not so infect the trial with un-fairness so as to deprive Petitioner Davis of due process. The jury's verdict finds substantial support in the evidentiary record. The Court finds no compelling reason to set this verdict aside.

The Court therefore rejects Claim 12 (¶ 88).

### F. Claim 13

Petitioner Davis argues that Ohio appellate courts have failed to comply with their statutory duty to fully review the proportionality of death sentences, there by depriving Davis of his rights under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. Most notably, Davis says reviewing courts have failed to collect data regarding cases where capital defendants receive a life sentence.

The Ohio Supreme Court rejected this claim without opinion. The Cuyahoga County Court of Appeals also rejected this claim on direct appeal, noting that the Ohio Supreme Court has held that a proportionality review need only involve prior cases where the death penalty has been imposed.

The Court finds the state courts' rejection of Petitioner Davis's proportionality review claim reasonable. Davis is entitled to habeas relief only if he shows a violation of the Constitution or federal law. *See Estelle*, 502 U.S. at 67, 112 S.Ct. 475. However, the United States Supreme Court has held that a proportionality review of death sentences is not constitutionally required. *See Pulley v. Harris*, 465 U.S. 37, 50–51, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). Therefore a petitioner is not entitled to habeas relief simply because of some inadequacy in a state-mandated proportionality review. As the Supreme Court made clear in *Harris*, a claim of inadequate proportionality review, "even if accurate, would not warrant issuing a writ of habeas corpus. Rather it would appear to be a matter that the state courts should consider, if they are so inclined, free of the

constraints of the federal writ." *Id.* at 42, 104 S.Ct. 871.

The Court thus rejects Claim 13.

### G. Claim 14

Petitioner Davis claims that Ohio's capital sentencing scheme violates the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution. Davis raises several arguments in support of his claim.

The Ohio Supreme Court rejected Petitioner Davis's arguments without opinion. On direct appeal, the Cuyahoga County Court of Appeals relied upon Ohio Supreme Court precedent, and found these argument lacking in merit.

The state courts reasonably rejected Petitioner Davis's constitutional claim. Eschewing any citation to authority, Davis presents a variety of conclusory arguments concerning the constitutional infirmity of Ohio's capital sentencing scheme. That Davis's allegations lack both specificity and supporting authority is no surprise; federal courts have consistently rejected Davis's constitutional arguments.

For example, Petitioner Davis says Ohio's sentencing scheme unconstitutionally allows the execution of a defendant who lacked a specific intent to kill. However, the United States Supreme Court has found that the Constitution does not prevent the imposition of the death penalty where a defendant lacked an intent to kill.

See *Tison v. Arizona*, 481 U.S. 137, 157, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987).

Additionally, Petitioner Davis says Ohio's sentencing system unconstitutionally reduces the weight of any mitigating evidence by requiring jurors "to not consider sympathy and mercy." Yet the United States Supreme Court has already rejected this argument. In *California v. Brown*, the Court held that the trial court's admonition that jurors should not be swayed by sympathy did not interfere with the jury's consideration of mitigating evidence. 479 U.S. 538, 541, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987).

Petitioner Davis also says Ohio's capital sentencing scheme violates the Constitution by creating a mandatory death penalty. But Ohio law does not provide for the automatic imposition of the death penalty for persons convicted of a particular crime. Instead, Ohio's sentencing scheme merely provides for the imposition of the death penalty when the aggravating circumstances of a particular crime outweigh any mitigating factors. Such an approach does not run afoul of the Constitution. *Cf. Woodson v. North Carolina*, 428 U.S. 280, 301, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (finding unconstitutional automatic imposition of death penalty for all defendants convicted of first-degree murder).

Petitioner Davis's remaining arguments are similarly lacking in merit.[10]

---

10. These remaining arguments warrant limited discussion. First, Petitioner Davis says Ohio's sentencing system gives prosecutors too much discretion in making charging decisions. But Davis does not point to any particular defect in Ohio's system. The United States Supreme Court has made clear that a prosecutor's discretion in charging a defendant with a capital crime does not violate the Constitution. *See Gregg v. Georgia*, 428 U.S. 153, 199, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). And the Sixth Circuit has likewise explained that prosecutorial discretion in making charging decisions is an inherent part of the criminal justice system. *See United States v. Talbot*, 825 F.2d 991, 999 (6th Cir. 1987).

Next, Petitioner Davis says Ohio unconstitutionally allows the same jury and same counsel to participate in both the guilt and penalty phases of a capital trial. Davis cites to no authority that would suggest this practice in any way violates the Constitution. Nor can the Court discern any constitutional infirmity in allowing a single jury and the same counsel to complete an entire capital trial.

Petitioner Davis also insists that the Ohio's sentencing system provides insufficient guidance for the jury during its penalty phase recommendations. Yet Ohio Revised Code § 2929.04 sets forth, in considerable detail, the manner in which the jury should consider whether to recommend the death penalty. Davis offers no convincing argument as to

Finding no constitutional defect in Ohio's capital sentencing scheme, the Court rejects Claim 14.

### H. Claim 15

Petitioner Davis contends that the trial court improperly instructed the jury in violation of his rights under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. Specifically, Davis insists that the trial court's penalty phase instructions were erroneous and thus rendered the jury's death penalty recommendation unreliable.

First, Davis says the trial court gave the jury an "acquittal first" instruction. In this argument, Davis claims the trial court informed the jury that it could consider other sentencing options only after first unanimously deciding against recommending the death penalty. This instruction, according to Davis, failed to notify each juror of his or her right to unilaterally prevent a death penalty recommendation.

The Ohio Supreme Court rejected this argument. The court reasoned that the trial court's instructions, when read as a whole, adequately informed the jury of the proper manner to deliberate and choose a penalty recommendation.

■■■ The Court finds the Ohio Supreme Court's analysis reasonable. The trial

court's instructions, when read in their entirety, made clear that any single juror could prevent a death penalty recommendation. Specifically, the court informed the jury that all twelve jurors must agree that the aggravating circumstances outweigh the mitigating circumstances before recommending that Petitioner Davis get the death penalty. This instruction, when coupled with the court's admonition that no juror should surrender her individual conscience and good judgment during deliberations, ensured that the jury understood the proper manner of reaching its penalty recommendation.

Second, Davis says the trial court erroneously used the statutory definition of "reasonable doubt" during its penalty phase jury instructions. Employing this definition, the trial court informed the jury that reasonable doubt is present when you "cannot say you are firmly convinced of the truth of the charge." Davis says the use of the word "charge" misled the jury into believing they could recommend the death penalty if they were convinced beyond a reasonable doubt that Davis committed the crime charged, without regard to the weighing of aggravating and mitigating factors.

The Ohio Supreme Court rejected this argument without opinion. The Cuyahoga

---

how this statutory framework provides inadequate guidance.

Further, Petitioner Davis complains that Ohio does not provide a "mercy option" in capital cases. Davis offers no authority or argument suggesting that such an option is constitutionally required.

According to Petitioner Davis, Ohio's failure to ensure that the sentencer concludes the death penalty is the "only appropriate penalty" violates the Constitution. Yet, again, Davis provides no authority in support of his argument.

Petitioner Davis next contends that Ohio does not adequately narrow the category of defendants eligible to receive the death penalty. In particular, Davis argues that Ohio unconstitutionally allows an aggravating circumstance to repeat an element of the underlying offense. However, the United States Supreme Court has held that an element of

an underlying offense may also constitute an aggravating circumstance for purposes of deciding whether to impose the death penalty. *See Lowenfield v. Phelps,* 484 U.S. 231, 246, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988).

Also, Petitioner Davis argues that Ohio unconstitutionally treats felony murder as a greater crime than premeditated murder. But the Constitution does not limit the death penalty to those convicted of premeditated murder. *See Tison,* 481 U.S. at 157, 107 S.Ct. 1676.

And finally, Petitioner Davis says Ohio's capital sentencing scheme unconstitutionally prevents a sentencer from considering all relevant mitigating evidence. Ohio's system does no such thing. Ohio Revised Code § 2929.04(B)(7) provides that the jury shall consider "[a]ny ... factors that are relevant to the issue of whether the offender should be sentenced to death."

County Court of Appeals also rejected this argument on direct appeal. The court refused to focus solely on the trial court's use of the word "charge," but rather construed the instructions as a whole. When so construed, the instructions, the court held, informed jurors that they must be firmly convinced that the aggravating circumstances outweigh any mitigating circumstances before recommending the death penalty.

This reasoning persuades. The trial court gave the jury extensive instructions regarding the weighing of relevant factors in deciding whether to recommend the death penalty. Davis's suggestion that the use of the word "charge" somehow led jurors to ignore these instructions is not credible.

Accordingly, the Court rejects Claim 15.

## I. Claim 4 (¶¶ 30–34)

In this claim, Petitioner Davis says that his counsel ineffectively represented him at trial. Davis insists his counsel's deficient performance deprived him of his Sixth Amendment right to the effective assistance of counsel.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." This provision recognizes the integral role the effective assistance of counsel plays in ensuring the adversarial system produces just results. *See Strickland,* 466 U.S. at 685, 104 S.Ct. 2052.

A petitioner making an ineffective assistance of counsel claim must establish two elements. First, the petitioner must show that his counsel's performance was deficient. A constitutionally deficient performance occurs when counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* Second, the petitioner must show that his counsel's deficient performance resulted in actual prejudice. This type of prejudice arises when counsel's errors were "so serious as to deprive

[Davis] of a fair trial, a trial whose result is reliable." *Id.*

The Ohio Supreme Court found that Davis did not make this showing. The court reasoned that, in light of the overwhelming evidence of Davis's guilt, any errors Davis's counsel may have committed did not actually prejudice Davis's defense.

The Court finds the Ohio Supreme Court's reasoning persuasive. Petitioner Davis does not show that his counsel's performance rendered the jury's verdict unreliable.

Petitioner Davis first argues that his counsel performed deficiently by failing to preserve the arguments Davis makes in Claim 11, Claim 12 (¶ 88), Claim 16, and Claim 17. The Court has already rejected these arguments. For the reasons earlier given, Davis's attorney's failure to preserve these arguments did not result in any actual prejudice.

Petitioner Davis also argues that his attorney should have objected to the prosecution's comments regarding his unsworn statement. During closing argument, the prosecution noted that Davis's unsworn statement was not subject to cross-examination. Davis insists that this statement was improper.

Yet Petitioner Davis does not point to any authority that limits a prosecutor's comments regarding an unsworn statement's lack of cross-examination. Counsel's failure to object to a permissible statement does not constitute deficient representation.

Accordingly, the Court rejects Claim 4 (¶¶ 30–34).

## J. Claim 16

Petitioner Davis contends that the trial court violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution by failing to properly weigh the aggravating circumstances against the relevant mitigating circumstances.

The Ohio Supreme Court rejected this claim. The Court found that any possible errors in the trial court's consideration of the relevant aggravating and mitigating circumstances were remedied by its independent review of Davis's death sentence. Finding little in the way of mitigating evidence, the court found Davis's death sentence appropriate.

 The Court finds the Ohio Supreme Court's analysis reasonable. The United States Constitution does not require a court to weigh aggravating and mitigating circumstances prior to imposing the death penalty. Of course, the Constitution does prohibit irrational or arbitrary death sentences. But the Ohio Supreme Court's thoughtful review of the penalty phase evidence ensured that the trial court did not arbitrarily accept the jury's recommendation that Petitioner Davis receive the death penalty.

The Court therefore rejects Claim 16.

### K. Claim 17

Finally, Petitioner Davis argues that the trial court allowed the prosecution to readmit exhibits used during the guilt phase of his trial during the penalty phase. Davis says this deprived him of his rights under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. The admission of these exhibits, Davis says, led the jury to consider non-statutory aggravating factors during the penalty phase deliberations.

The Ohio Supreme Court denied this claim without opinion. In reviewing Petitioner Davis's direct appeal, the Cuyahoga County Court of Appeals also rejected this claim. The court based its decision on the Ohio Supreme Court's opinion in *State v. Woodard*, 68 Ohio St.3d 70, 78, 623 N.E.2d 75, 81 (1993). In that case, the court held that the prosecution could introduce any evidence during the penalty phase "that is relevant to the aggravating circumstances the offender was found guilty of committing." *Id.* (quoting OHIO REV. CODE § 2929.03(D)(1)).

The state courts' rejection of Petitioner Davis's claim in no way reflects an unreasonable application of controlling federal law. As the Court explained in discussing Claim 11, the United States Supreme Court has never construed the Constitution as prohibiting jurors from considering aggravating factors other than those set forth in a state statute. *See Zant*, 462 U.S. at 878, 103 S.Ct. 2733. Thus, even assuming the challenged exhibits led the jury to consider nonstatutory aggravating factors, Davis fails to show any constitutional violation.

For this reason, the Court rejects Claim 17.

### VIII. Conclusion

The Court has considered each of the arguments Petitioner Davis offers in support of his petition for a writ of habeas corpus. For the reasons set forth above, the Court finds that Davis fails to demonstrate his right to a writ of habeas corpus. Accordingly, the Court denied Davis's petition.

IT IS SO ORDERED.

### ORDER

The Court has entered its opinion in the above-captioned matter. For the reasons set forth above, the Court finds that Davis fails to demonstrate his right to a writ of habeas corpus. Accordingly, the Court denied Davis's petition [Doc. 26].

This case is hereby terminated pursuant to Fed.R.Civ.P. 58. Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this order could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c); FED. R. APP. 22(b).

IT IS SO ORDERED.